IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| YOHAN WEBB, | | |
| Plaintiff, | | **4:21CV3031** |
| vs. | | |
| STATE OF NEBRASKA, PETE RICKETTS, Governor; LEIRON GAYLOR BAIRD, Mayor of Lincoln; JEFF BLIEMEISTER, Chief of (LPD); LINCOLN POLICE DEPT., CITY OF LINCOLN, BRENDA URBANEK, Training Center Director for the (LPD); MATTHEW FRANKEN, (Investigator, LPD); UNKNOWN BY NAME, Female-Caucasian, LPD Officer; UNKNOWN BY NAMES, Male-Caucasian, LPD Officers; UNKNOWN BY NAME, Matthew Franken's Immediate Supervisor of LPD; LANCASTER COUNTY, ROMA AMUNDSON, Lancaster County Board of Commissioners; SEAN FLOWERDAY, DEB SCHORR, RICK VEST, CHRISTA YOUKUM, DAVID A. DERBIN, Chief Administrative Officer; ANN E. AMES, Deputy Chief Administrative Officer; BRAD JOHNSON, Director of Lancaster County Dept. of Corrections/ Classification Committee Lancaster County Jail (LCJ); RICK GREY, Jail Administrator; KEN PREY, Jail Administrator (LCJ); UNKNOWN BY NAME, Classification Training Officer (LCJ); CORRECTION OFFICER O'BRYAN, #973 - Classification (LCJ);  UNKNOWN BY NAMES, Correction Officers (LCJ); BRUCE PRENDA, Chief Deputy Prosecutor; AMY J. GOODRO, Deputy | | **MEMORANDUM AND ORDER** |

Prosecutor; CAPITOL CITY TOWING,
(Owner, Unknown by Name) Lincoln, NE;
LINCOLN JOURNAL STAR
NEWSPAPER, Owner & Editor Unknown
by Name; 1011 NEWS, Owner and News
Reporter(s) Unknown by Name; and
www.lincolnjournalstar\
mobile\mugshots\lincoln.ne.com, Owner
and Editor of Blog for Posting Photographs
Unknown by Name,

Defendants.

Plaintiff, a prisoner being held at the Lancaster County Jail, has been granted leave to proceed in forma pauperis (Filing 15).[1] After initial review of Plaintiff's Complaint (Filing 27), Plaintiff was granted leave to file an amended complaint, which Plaintiff has now submitted (Filing 44). The court will now conduct an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a

---

[1] Lancaster County Court records indicate that on October 14, 2020, Lancaster County Court Judge Timothy Phillips ordered Plaintiff to be held by a Lancaster County Correctional Facility until $101.00 in fines are paid for misdemeanor convictions of refusing to comply with an order of the police and failure to appear in court. Lancaster County Department of Corrections Current Inmate Search, available at https://app.lincoln.ne.gov/aspx/cnty/jailpop/default.aspx. Federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (federal courts may take judicial notice of judicial opinions and public records); *Stahl v. United States Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (taking judicial notice of public records, and considering such materials in a motion to dismiss).

governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must "dismiss the complaint, or any portion of the complaint" it determines "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Comparable language is contained in 28 U.S.C. § 1915(e)(2)(B) (applicable to IFP plaintiffs).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF COMPLAINT

Plaintiff sues more than 32 Defendants, many of whom are unnamed, and raises 24 federal constitutional and state-law claims arising from his alleged unlawful confinement from July 25, 2018, to September 9, 2018. He requests multiple millions

of dollars in damages from the Defendants, who are sued in their individual and official capacities.[2]

Plaintiff alleges that Defendant Franken, an investigator with the Lincoln Police Department ("LPD"), handcuffed him without the benefit of being read his *Miranda* rights on July 25, 2018. Franken supposedly told Plaintiff he was not under arrest, but he placed handcuffs on Plaintiff for refusing to talk to Franken. Franken searched Plaintiff's pockets and removed a bag containing $200.00 and a lighter.[3] A second LPD officer (name unknown) then searched Plaintiff and placed him in her patrol car. Plaintiff was first taken to the Hall of Justice, where he was searched again by two more unnamed LPD officers, and he was then transported in another vehicle to the Lancaster County Jail.

At the jail, several unnamed correctional officers again searched Plaintiff and agreed they had "enough to hold him." He was charged with possession of methamphetamine that was allegedly discovered during the "7th search" of Plaintiff's clothing, implying that the drugs were planted there by one of the correctional officers. Plaintiff was then placed in a "suicide restraint chair" in a "POD-R" cell that had a hole in the floor for toilet usage and smelled of feces and urine. Plaintiff claims he was fully restrained in this cell for two or three days, during which he was not fed or given water. While he was restrained, Plaintiff's request to use a restroom (as opposed to the hole in the floor) was denied, causing Plaintiff to urinate on himself. When an unnamed correctional officer removed Plaintiff from the "suicide chair," the officer removed Plaintiff's clothing, and another officer twisted his left wrist and arm upward, causing a "popping sound" and intense pain in Plaintiff's left shoulder. Plaintiff's request for

---

[2] Plaintiff's Amended Complaint mentions injunctive relief, but does not specify what Plaintiff seeks to enjoin. Instead, Plaintiff attaches dollar figures to those requests. Therefore, the court will assume Plaintiff actually asserts claims for money damages instead of injunctive relief.

[3] Plaintiff claims he wrote a letter to the LPD seeking the return of his property, but it has not yet been returned.

4

medical attention was denied, and he still suffers pain from the incident. Plaintiff was then given a "Ninja suit" to wear.

After two to three days in POD-R, Plaintiff alleges that Defendant O'Bryan, a correctional officer, moved him from POD-R to Medical (where Plaintiff was placed on suicide watch) and then to POD-S, where Plaintiff stayed until September 9, 2018. Plaintiff claims O'Bryan did not comply with "policy, procedures, or medical protocols" in moving him from cell to cell, and Defendants Brad Johnson, Rick Grey, Ken Prey, and an unnamed classification training officer knew of O'Bryan's actions, but failed to take corrective actions as his superiors.

After Plaintiff's release on September 9, 2018, Plaintiff attempted to stay at the People's City Mission, but the Mission allegedly rejected him because 10/11 News (a local television newscast), the Lincoln Journal Star (a local newspaper), and the Journal Star's website featuring mug shots falsely reported that Plaintiff was wanted for first-degree sexual assault. Plaintiff claims 10/11 and the Journal Star defamed and slandered him, put him in danger by causing him to live on the streets, and prevented him from being employed.[4]

---

[4] Plaintiff's Amended Complaint also contains allegations (1) against Defendant Amy Goodro, Deputy Lancaster County Attorney, regarding a dismissed and sealed criminal case against him involving sexual assault (Filing 44 at CM/ECF p. 16), and (2) against the LPD and Capitol City Towing for impounding Plaintiff's vehicle in July 2021 without notice or cause (Filing 44 at CM/ECF p. 12). These allegations do not arise out of the same transaction or occurrence (i.e., Plaintiff's alleged unlawful confinement from July 25, 2018, to September 9, 2018) and do not present questions of law or fact common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."); Fed. R. Civ. P. 21 (court may drop party or sever claim against a party in order to eliminate misjoinder). Claims related to these allegations will be severed from this lawsuit; Plaintiff will be required to prosecute these unrelated claims in separate actions; and he will be required to pay separate filing fees for such separate actions unless he is permitted to proceed in forma pauperis.

## III.  DISCUSSION

### A. Section 1983 Claims

Plaintiff attempts to bring claims under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (Filing 44 at CM/ECF pp. 6-7.) Because Plaintiff does not specify which claims are asserted against which Defendants, the court will discuss applicable claims in the course of addressing the potential liability of each Defendant. As an initial matter, though, there are a few claims that can be dismissed outright:

(1)  Eighth Amendment. A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual punishment. However, where a pretrial detainee is involved, as in this case, the detainee's challenge to such conditions is analyzed under the Due Process Clause of the Fifth Amendment (with respect to federal actors) or the Fourteenth Amendment (with respect to state actors), as in this case. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (Eighth Amendment has no application until there has been formal adjudication of guilt); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). Therefore, Plaintiff's claims under the Eighth Amendment may be dismissed.

(2)  Ninth Amendment.  Plaintiff does not, and cannot, state a claim under the Ninth Amendment. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., Amend. IX. The Ninth Amendment does not confer substantive rights in addition to those conferred by other portions of our governing law, *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991), so cannot form the basis for a section 1983 claim. *Henderson v. S & W Foreclosure Corp.*, No. 1:11CV169, 2012 WL 43505, at *2 (E.D. Mo. Jan. 9, 2012); *Albert v. Lee*, No. CV 04-1014, 2005 WL 8163277, at *19 n.17 (D. Minn. Mar. 3, 2005), *report and recommendation adopted,* No. CV 04-1014, 2005 WL 8163275 (D. Minn. Mar. 31, 2005).

(3) Fourteenth Amendment/Equal Protection. "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as here, a plaintiff has not alleged discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects.*" *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied). Here, Plaintiff has made no allegations whatsoever regarding other similarly situated individuals who have been treated more favorably.

## 1.  State of Nebraska

Plaintiff alleges that Defendant State of Nebraska is liable for his unlawful confinement because the State is the "superior/employer" of other Defendants. (Filing 44 at CM/ECF p. 18.) Plaintiff's claims against the State of Nebraska will be dismissed because 42 U.S.C. § 1983 only provides a cause of action against a "person" who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* In addition, the Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

### 2. Pete Ricketts

As stated above, Governor Ricketts cannot be sued in his official capacity under section 1983. "State officers sued for damages in their official capacity are not 'persons' for purposes of [section 1983] because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21 (1991). Also, because this elected official is not alleged to have participated in unconstitutional action, there also can be no personal liability. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."). Therefore, this Defendant will be dismissed from this action.

### 3. City of Lincoln

Plaintiff alleges that the City of Lincoln is liable for his unlawful confinement because it employed some of the Defendants (Filing 44 at CM/ECF pp. 13, 18).

To prevail on a claim alleged against the City of Lincoln, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional

8

violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).[5]

Plaintiff's Amended Complaint does not contain any facts from which it might reasonably be inferred that the City of Lincoln had an unconstitutional policy or custom which caused Plaintiff's alleged injuries. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)). Further, Plaintiff's allegations are focused on "an isolated incident of alleged . . . misconduct . . ." which "cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). Therefore, the City of Lincoln will be dismissed from this action.

### 4.  Leiron Gaylor Baird

Plaintiff alleges that Mayor Gaylor Baird is liable as the employer of various Defendants and because she was responsible for the "hiring, firing . . . of [some of the] Defendants." (Filing 44 at CM/ECF pp. 13, 18.) As explained above, suing the mayor in her official capacity is functionally equivalent to suing the City, against which Plaintiff has failed to state a claim. Plaintiff alleges the mayor is being sued as the employer and superior of some of the Defendants, but vicarious liability is inapplicable to section 1983 suits. Neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers v. King*, 885

---

[5] A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

F.3d 1118, 1122-23 (8th Cir. 2018). Insofar as the mayor's individual liability goes, Plaintiff's Amended Complaint contains no facts which would permit a finding of personal liability on the part of the mayor. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and Plaintiff has not done so here. *Iqbal*, 556 U.S. at 676.

Plaintiff also alleges that the mayor is being sued because she was responsible for the "hiring, firing . . . of [some of the] Defendants." (Filing 44 at CM/ECF p. 18.) However, there are no facts alleged which would support a finding of liability against the mayor, either in her official or individual capacity, under this "hiring" theory. In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), the Supreme Court addressed the issue of municipal liability under section 1983 for a single hiring decision made by a sheriff. Concerned that municipal liability could very easily collapse into respondeat superior liability in the context of a single, facially lawful hiring decision, the Court adopted stringent culpability and causation requirements, noting that "[a] showing of simple or even heightened negligence will not suffice." *Morris v. Crawford Cty.*, 299 F.3d 919, 922 (8th Cir. 2002) (quoting *Brown*, 520 U.S. at 407). The Court demanded that courts "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* (quoting *Brown*, 520 U.S. at 410). "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* (quoting *Brown*, 520 U.S. at 412) (emphasis in original). This exacting test also applies to individual-capacity claims. *See Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019) (involving individual-capacity claim against sheriff for hiring decision).

Therefore, Plaintiff does not have a viable claim against Mayor Leiron Gaylor Baird, and this Defendant will be dismissed from this action.

### 5.  Lincoln Police Department

Plaintiff alleges that he wrote the Lincoln Police Department requesting the return of the money and lighter that was taken from his pocket, but the property has not been returned. The Lincoln Police Department is not a proper Defendant. *See Gerlach v. Omaha Nebraska Police Dep't*, No. 8:19CV67, 2019 WL 1207178, at *1 (D. Neb. Mar. 14, 2019) (police department is not suable under 42 U.S.C. § 1983). Therefore, this Defendant and the claim against it will be dismissed.

### 6.  Jeff Bliemeister, Chief of Lincoln Police Department

Plaintiff alleges only that the Defendant city police officers worked for Bliemeister. As with Mayor Gaylor Baird, discussed above, suing Chief Bliemeister in his official capacity is functionally equivalent to suing the City, against which Plaintiff has failed to state a claim. Further, Plaintiff's theory of holding Chief Bliemeister liable under section 1983 because of his status as the employer and superior of some of the Defendants is one of vicarious liability, which is inapplicable to section 1983 suits. "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019).

The Chief of Police cannot be held personally liable for his own individual actions unless he "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quotations marks and citations omitted). Plaintiff has failed to allege any facts whatsoever supporting such a claim.

Therefore, Plaintiff does not have a viable claim against Chief of Police Bliemeister, and this Defendant will be dismissed from this action.

## 7. City of Lincoln Police Officers

Plaintiff sues several Lincoln Police Officers: training center director Brenda Urbanek, investigator Matthew Franken, Franken's unnamed supervisor, an unnamed female Caucasian officer, and unnamed male Caucasian officers. Plaintiff alleges that Urbanek failed to properly train Franken and the unnamed female officer, and that Franken's supervisor failed to properly supervise Franken and the female officer. Plaintiff claims that Franken handcuffed and searched Plaintiff, while the female officer also searched Plaintiff and drove him to the Hall of Justice, where Plaintiff was again searched by unnamed male officers. Franken then drove Plaintiff to the Lancaster County Jail where he was taken into custody.

Liberally construing the Amended Complaint, Plaintiff is asserting Fourth Amendment claims for false arrest and an unlawful search against Franken and the unnamed female officer who took him into custody on July 25, 2018. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Plaintiff alleges he was handcuffed, placed in a patrol car, and transported to the police station. This constitutes a seizure under the Fourth Amendment. *See, e.g., United States v. Tovar-Valdivia*, 193 F.3d 1025, 1027 (8th Cir. 1999) ("We have little trouble determining that the officer placed Tovar under arrest when he placed the handcuffs on him. At that moment, Tovar was restrained and, by any reasonable standard, was not free to leave."). Plaintiff further alleges that the seizure of his person occurred because he refused to talk to Franken, and that although he was later charged with possession of methamphetamine, no drugs were found prior to his arrest.[6] Giving Plaintiff the benefit of all reasonable inferences that can be drawn from the facts alleged in the Amended Complaint, *see Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (stating Rule 12(b)(6) standard of review), Plaintiff has stated a plausible Fourth Amendment false-arrest and unlawful-search claim. *See Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) ("Police officers violate the Fourth Amendment when they

---

[6] Plaintiff alleges that Franken searched his person and seized $200 in cash and a lighter. (Filing 44 at p. 13.)

conduct an arrest without a warrant or probable cause."); *Maryland v. King*, 569 U.S. 435, 449 (2013) (the government may search an accused person when they are legally arrested).[7] To the extent Plaintiff may also be asserting a Fourth Amendment false-imprisonment claim against Franken or other officers for placing him in jail, on the facts alleged, such a claim is simply an extension of his false-arrest claim and cannot be separately maintained. *See Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, at *7 & n.3 (D. Neb. Sept. 19, 2018) (dismissing false-imprisonment claim as duplicative of false-arrest claim).

Plaintiff states he is also suing Brenda Urbanek for failing to properly train Franken and the unnamed female officer and Franken's supervisor for failing to properly supervise Franken and the female officer. Plaintiff indicates these persons are being sued in their official capacities for actions taken by subordinates, and in their individual capacities based upon their involvement in training and supervising police officers. Again, there can be no vicarious liability in a section 1983 action, and Plaintiff has not alleged any facts to support a claim against these Defendants individually.

## 8.  Lancaster County, County Commissioners & Administrative Officer

What has been said above concerning the City of Lincoln applies with equal force to claims made against Lancaster County, six County Commissioners  (Defendants Roma Amundson, Sean Flowerday, Deb Schorr, Rick Vest, Christa Youkum, David A. Derbin) in their official capacities, and Ann E. Ames, Deputy Chief Administrative Officer for Lancaster County, in her official capacity. There are no facts alleged in Plaintiff's Complaint which would support a finding of liability against the county.

Plaintiff also seeks to recover damages from the County Commissioners and Ames in their individual capacities because they "are responsible for the current appointment of" Defendant Brad Johnson, Director of the Lancaster County

---

[7] The protections of the Fourth Amendment are enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *See Colorado v. Bannister*, 449 U.S. 1, 2 (1980).

Department of Corrections, the County Commissioners are Johnson's "employer," and Johnson is their "subordinate." (Filing 44 p. 18.) "It is well settled that § 1983 does not impose *respondeat superior* liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a section 1983 claim, the Plaintiff must allege that the Defendants were personally involved in or had direct responsibility for incidents that resulted in injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in section 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff's claims against the County Commissioners and Ames in their individual capacities are based solely on conclusory allegations that these Defendants are responsible for the actions of their subordinate. Plaintiff's Complaint therefore fails to state a claim upon which relief may be granted against these Defendants.

### 9.  Lancaster County Jail Administrators

Plaintiff sues Brad Johnson, Director of the Lancaster County Department of Corrections; Lancaster County Jail administrators Rick Grey and Ken Prey; and an unknown classification training officer in their official and individual capacities for being "aware" of the actions of Lancaster County Jail correctional officer O'Bryan, "which did not conform to policy, procedures, or medical protocols." Plaintiff also alleges that Johnson, Grey, and Prey "failed to take corrective actions in the matter as 'immediate' superiors" of O'Bryan, and the unknown classification training officer failed to train O'Bryan "in the use of policy, procedure, or medical protocols." (Filing 44 at CM/ECF p. 17.)

As discussed above, since there are no facts alleged in Plaintiff's Complaint which would support a finding of liability against Lancaster County (which is the entity effectively sued when one brings claims against county administrators in their official capacities), Plaintiff has failed to state a claim upon which relief can be granted against Defendants Johnson, Grey, Prey, and the unknown classification training officer in their official capacities.

Further, because Defendant O'Bryan cannot be liable under section 1983 for violating jail policy, procedures, or protocols, Defendants Johnson, Grey, Prey, and the unknown classification training officer also cannot be liable for being "aware" of or failing to correct these alleged violations or for failing to train O'Bryan on internal jail policy, regulations, and protocol. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy"); *see also Hughes*, 454 F.3d at 798 ("It is well settled that § 1983 does not impose *respondeat superior* liability." (internal quotation marks omitted)).

Therefore, Plaintiff has failed to state a claim upon which relief can be granted against Defendants Johnson, Grey, Prey, and the unknown classification training officer in their official and individual capacities.

### 10.  Lancaster County Correctional Officers

Plaintiff sues Officer O'Bryan, unknown Lancaster County Jail correctional officers, and an unknown Lancaster County Jail correction training officer. Plaintiff alleges that Defendant O'Bryan moved him from POD-R to Medical (where Plaintiff was placed on suicide watch) and then to POD-S, where Plaintiff stayed until September 9, 2018. Plaintiff claims O'Bryan did not comply with "policy, procedures, or medical protocols" in moving him from cell to cell. Plaintiff further alleges that the correctional officers searched him after he was booked into the jail and found methamphetamine which had not been found in prior searches, placed him in a suicide-restraint chair, put him in a cell where the officers failed to give him food or water, refused to let him use a restroom other than the hole in the floor, stripped him of clothing after he was removed from the chair, and injured his shoulder when twisting Plaintiff's arm. Finally, Plaintiff claims that the unknown correction training officer failed to train and supervise the correctional officers to properly use the suicide-restraint chair and to avoid using excessive force in removing inmates from the chair.

As discussed above, since there are no facts alleged in Plaintiff's Complaint which would support a finding of liability against Lancaster County (which is the entity effectively sued when one brings claims against county employees in their official capacities), Plaintiff has failed to state a claim upon which relief can be granted against these Defendants in their official capacities. As also discussed above, because Defendant O'Bryan cannot be held liable under section 1983 in his individual capacity for violating jail policy, procedures, or protocols, Plaintiff has likewise failed to state a claim as to him. (Filing 44 at CM/ECF p. 17.)

Pretrial detainees such as Plaintiff "are entitled to at least as great protection under the Fourteenth Amendment as that afforded convicted prisoners under the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A prisoner asserting a conditions-of-confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise," and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Wilson v. Sieter*, 501 U.S. 294, 304 (1991). A conditions-of-confinement claim based on prison conditions requires a showing of: (1) a deprivation of "minimal civilized measure of life's necessities" and (2) deliberate indifference by prison officials to those basic needs. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 304.

Liberally construed, the allegations of Plaintiff's complaint are sufficient to state a plausible Fourteenth Amendment claim against the unknown correctional officers in

16

their individual capacities regarding the conditions of his confinement while he purportedly was on "suicide watch" at the jail.[8]

Excessive force claims of pretrial detainees are analyzed under an objective reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). Factors relevant to assessing the objective reasonableness of force used by officers include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

Liberally construing Plaintiff's Amended Complaint, an excessive-force claim has been adequately alleged against the unknown correctional officer who twisted Plaintiff's arm, possibly causing a shoulder injury, after he was freed from the "suicide chair."

Plaintiff also alleges he was placed in administrative segregation for non-disciplinary reasons after he was removed from "suicide watch" in the jail's medical area. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (requiring pretrial detainee to be placed in administrative segregation is punishment; claim that pretrial detainee was denied due process when placed in administrative detention for refusing to work did not lack arguable basis in law and should not have been dismissed prior to service). But "not every disability imposed during . . . detention amounts to

---

[8] Plaintiff should note that in order to recover more than nominal damages under the PLRA, a prisoner must allege or prove more than mental or emotional injury. *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018); 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."). The Eighth Circuit interprets the PLRA to require more than a de minimis physical injury. *Id.*

'punishment' in the constitutional sense.'" *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]f a particular condition or restriction of . . . detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* Although Plaintiff may have a legitimate Fourteenth Amendment claim with respect to his placement in administrative segregation, he has not alleged that any of the Defendants made that placement decision.

As to the unknown correction training officer who allegedly failed to train and supervise the correctional officers to properly use the suicide-restraint chair and to avoid using excessive force in removing inmates from the chair, he cannot be held personally liable for his own individual actions unless he "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quotations marks and citations omitted). Plaintiff alleges no facts from which the court can infer supervisory liability for this Defendant.

### 11.  County Attorneys

Plaintiff states he is suing chief deputy Lancaster County prosecutor Bruce Prenda for failing to train and supervise deputy prosecutor Amy Goodro, who held Plaintiff in jail from July 25 to September 9, 2018. (Filing 44 at CM/ECF p. 17.) Plaintiff's Complaint does not state a claim upon which relief may be granted against these Defendants because "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31(1976)).

To the extent Plaintiff raises a claim of malicious prosecution, Plaintiff fails to state a section 1983 claim upon which relief may be granted because the Eighth Circuit Court of Appeals has held that an allegation of malicious prosecution without more cannot sustain a civil rights claim under section 1983. *Joseph v. Allen*, 712 F.3d 1222,

1228 (8th Cir. 2013) (citing *Kurtz v. City of Shrewsbury*, 245 F.3d 753 (8th Cir. 2001)); *see Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir. 2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury."); *see also Harrington v. City of Council Bluffs*, 678 F.3d 676, 680-81 (8th Cir. 2012) (questioning whether "malicious prosecution is a constitutional violation at all").

### 12.  Capitol City Towing

For the reasons stated in footnote (4), Plaintiff's claims against Capitol City Towing will be dismissed without prejudice.

### 13.  Lincoln Journal-Star, 10/11 News, Mobile Mugshots

Plaintiff alleges that after his release from the Lancaster County Jail on September 9, 2018, 10/11 News (a local television newscast), the Lincoln Journal Star (a local newspaper), and the Journal Star's website containing mug shots falsely reported that Plaintiff was wanted for first-degree sexual assault. Plaintiff does not allege federal constitutional claims against these Defendants, but instead claims that 10/11 News and the Lincoln Journal Star defamed and slandered him, which are state-law claims. (Filing 44 at CM/ECF p. 17.) These state claims will be allowed to proceed against the Lincoln Journal Star (which includes the Mobile Mugshots website) and 10/11 News. *See Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011) (elements of defamation claim); *Nolan v. Campbell*, 690 N.W.2d 638, 647 (Neb. App. 2004) (when spoken or written words are slanderous per se).

### B.  State-Law Claims

Plaintiff also attempts to assert state-law claims for intentional infliction of emotional distress, malicious prosecution, false imprisonment, false arrest, and excessive force. (Filing 44 at CM/ECF pp. 7-11.) Plaintiff's state-law claim of false arrest may proceed against Defendant Franken and the unknown LPD female officer; the claim of excessive force may proceed against the unknown correctional officer who

19

twisted Plaintiff's arm at the Lancaster County Jail; and the claims of intentional infliction of emotional distress and false imprisonment may proceed against the unknown correctional officers at the Lancaster County Jail.[9]

## IV. PENDING MOTIONS

### A. Motions for Writ of Mandamus (Filings 45 & 46)

Both of Plaintiff's Motions for Writ of Mandamus (Filings 45 & 46) request a ruling on Plaintiff's prior Motion for Injunction (Filing 40), which has already been ruled upon. (Filing 43; *see also* Filing 30.) Therefore, Plaintiff's Motions will be denied as moot.

### B. Motion to Amend (Filing 47)

With no further explanation or detail, Plaintiff moves "to amend complaint to add supplemental information in specified parts of particular defendants" and "to serve interrogatories on identified defendants." (Filing 47.) Plaintiff's Motion will be denied.

### C. Motion to Appoint Specific Counsel (Filing 49)

Plaintiff has also filed a motion for appointment of specific counsel. (Filing 49.) "There is no constitutional or statutory right to appointed counsel in civil cases," *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006), much less particular counsel selected by Plaintiff. A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts

---

[9] The court cautions Plaintiff that allowing these state-law claims to proceed to service of process is not a final determination of the merits of Plaintiff's claims or potential defenses thereto, including the applicability of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-910(7) (Westlaw 2021).

and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Pignotti*, No. 20-2560, 2021 WL 2285235, at *1 (8th Cir. June 4, 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). Upon consideration of these factors, the court concludes that appointment of counsel is not indicated at this time because the claims presented are not legally or factually complex, and Plaintiff's multiple lawsuits in this court demonstrate his ability to investigate facts and present his claims and arguments.

## V. CONCLUSION

The following federal claims may proceed:

• Plaintiff's Fourth Amendment claims for false arrest and unlawful search against Defendant Lincoln Police Officers Franken and the unknown female officer in their individual capacities.

• Plaintiff's Fourteenth Amendment claim challenging the conditions of Plaintiff's confinement in the Lancaster County Jail against the unknown correctional officers in their individual capacities.

• Plaintiff's Fourteenth Amendment excessive-force claim against the unknown correctional officer in his individual capacity who twisted and injured Plaintiff's arm in the Lancaster County Jail.

The following state-law claims may proceed:

• Plaintiff's state-law claim for false arrest against Lincoln Police Officers Franken and the unknown female officer in their individual and official capacities.

• Plaintiff's claim for excessive force against the unknown correctional officer who twisted Plaintiff's arm at the Lancaster County Jail in his individual and official capacity.

21

• Plaintiff's claims for intentional infliction of emotional distress and false imprisonment against the unknown correctional officers at the Lancaster County Jail in their individual and official capacities.

• Plaintiff's claims for defamation and slander against 10/11 News and the Lincoln Journal Star.

All other claims and Defendants will be dismissed without prejudice.

Because this action cannot proceed to service of process against all Defendants without the identification of the unnamed Defendants, the court will allow Lancaster County and the City of Lincoln to be served with process so that Plaintiff may serve written interrogatories upon them **for the sole purpose** of identifying the Defendants against whom Plaintiff's claims have been allowed to proceed.[10] The court will also expedite discovery by permitting Plaintiff to serve such interrogatories on the County and the City as soon as an appearance has been entered on behalf of such governmental entity.[11] Neither the County nor the City shall be required to respond to Plaintiff's

---

[10] Plaintiff should refer to Federal Rule of Civil Procedure 33 and Nebraska Civil Rule 33.1 for applicable procedures regarding written interrogatories.

[11] Rule 26 of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). However, this court's General Order No. 2020-01 provides that "all pro se civil cases (where the plaintiff is proceeding without a lawyer) that are assigned to a district judge for trial, whether filed by a prisoner or not, are exempted from the disclosure and conference requirements of Federal Rule of Civil Procedure 26." (Filing 8, p. 3 at ¶ 17.) "The court will not issue a scheduling packet in a pro se civil case assigned to a district judge. Instead, the court will issue a progression order, addressing discovery and other issues, approximately thirty days after the last defendant has answered. No discovery in pro se civil cases assigned to a district judge may take place until a progression order is entered unless the court's [*sic*] orders otherwise. Requests to engage in discovery before the court enters the progression order must be made by

Amended Complaint; it is the court's intention that each of them will be dismissed from the action after the relevant Defendants are identified.

IT IS ORDERED:

1.      The following federal claims may proceed:

• Plaintiff's Fourth Amendment claims for false arrest and unlawful search against Defendant Lincoln Police Officers Franken and Unknown by Name, Female Caucasian, LPD Officer, in their individual capacities.

• Plaintiff's Fourteenth Amendment claim challenging the conditions of Plaintiff's confinement in the Lancaster County Jail against Unknown by Names, Correction Officers (LCJ), in their individual capacities.

• Plaintiff's Fourteenth Amendment excessive-force claim against the unknown LCJ correctional officer in his individual capacity who twisted and injured Plaintiff's arm in the Lancaster County Jail.

2.      The following state-law claims may proceed:

• Plaintiff's state-law claim for false arrest against Lincoln Police Officers Franken and Unknown by Name, Female Caucasian, LPD Officer, in their individual and official capacities.

• Plaintiff's claims for intentional infliction of emotional distress and false imprisonment at the Lancaster County Jail against Unknown by Names, Correction Officers (LCJ), in their individual and official capacities.

• Plaintiff's claim for excessive force against an unknown correctional officer in his individual and official capacity who twisted and injured Plaintiff's arm at the Lancaster County Jail.

• Plaintiff's claims for defamation and slander against 10/11 News and the Lincoln Journal Star.

---

motion." (*Ibid.*, p. 3, ¶ 18.) In this case, the court is ordering that Plaintiff may engage in limited discovery prior to the entry of a progression order.

3.     All other claims and Defendants are dismissed from this action without prejudice. The only remaining Defendants are these:

• Matthew Franken (Investigator, LPD)

• Unknown by Name, Female Caucasian, LPD Officer

• Unknown by Names, Correction Officers (LCJ)

• 10/11 News

• Lincoln Journal Star

• City of Lincoln

• Lancaster County

4.     At this time, this action shall proceed to service only against Defendants Lancaster County and the City of Lincoln, and **solely for the purpose** of permitting Plaintiff to serve interrogatories on said Defendants in order to determine the identity of individuals who are employed by said Defendants and who are alleged to have violated Plaintiff's constitutional rights. Neither the County nor the City shall be required to respond to Plaintiff's Amended Complaint, which the court has determined fails to state a claim upon which relief may be granted against said Defendants.

5.     After service of process has been obtained on the City and County and such Defendants have entered an appearance, Plaintiff may serve written interrogatories upon the City and County **for the limited purpose** of discovering the names of the following individuals who are alleged in the Amended Complaint to have violated Plaintiff's constitutional rights:

• Unknown by Name, Female Caucasian, LPD Officer, who allegedly assisted Officer Franken in arresting and transporting Plaintiff to the Hall of Justice on July 25, 2018.

• Unknown by Names, Correction Officers (LCJ), who dealt with Plaintiff in his assigned POD-R cell at the Lancaster County Jail and who allegedly placed him in a suicide restraint chair, injured his arm, and exposed him to unconstitutional conditions of confinement from July 25, 2018, to July 28, 2018.

6.      After Plaintiff learns the identities of the currently unnamed Defendants, and within 60 days of the date of this Memorandum and Order, Plaintiff shall file a supplement with the court containing **only** the names of such Defendants. Plaintiff shall include no additional defendants or allegations, and should he do so, such material will be stricken. After such Defendants are identified, service of process will be ordered on all Defendants, except for the City of Lincoln and Lancaster County, which shall be dismissed from this action.

7.      The clerk of the court shall set a pro se case management deadline as follows: January 4, 2022—supplement providing names of unidentified defendants due.

8.      The clerk of the court is directed to complete a summons form and a USM-285 form for each of the following Defendants:

a.      Lancaster County c/o County Clerk
555 South 10th Street, Suite 108
Lincoln, Nebraska 68508

b.      City of Lincoln c/o City Clerk
555 South 10th Street, Suite 103
Lincoln, Nebraska 68508

9.      The clerk of the court shall forward the completed forms to the Marshals Service,[12] together with two (2) copies of each of the following filings: Plaintiff's Amended Complaint (Filing 44) and this Memorandum and Order.

---

[12] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in section 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

10.     The Marshals Service shall serve Defendants at the above-listed addresses by certified mail or any other method authorized by the Federal Rules of Civil Procedure.[13]

11.     Plaintiff's Motions for Writ of Mandamus (Filings 45 & 46) are denied as moot.

12.     Plaintiff's Motion to Amend (Filing 47) is denied.

13.     Plaintiff's Motion to Appoint Specific Counsel (Filing 49) is denied.

DATED this 5th day of November, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

[13]   "A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). "Any county, city, or village of [Nebraska] may be served by personal, residence, certified mail, or designated delivery service upon the chief executive officer or clerk." Neb. Rev. Stat. § 25-510.02(2) (Westlaw 2021).