IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YOHAN WEBB,<br><br>           Plaintiff,<br><br>vs.<br><br>MATTHEW FRANKEN, (Investigator, LPD); LANCASTER COUNTY, UNKNOWN BY NAMES, Correction Officers (LCJ); LINCOLN JOURNAL STAR NEWSPAPER, Owner & Editor Unknown by Name; 1011 NEWS, Owner and News Reporter(s) Unknown by Name; and MELISSA C. RIPLEY, #1331, LPD Officer,<br><br>           Defendants. | 4:21CV3031<br><br>**MEMORANDUM<br>AND ORDER** |

## BACKGROUND

This is a 42 U.S.C. § 1983 case in which Lancaster County Jail inmate Johann Webb claims, in part, that unknown jail correctional officers mistreated him in his cell from July 25, 2018, to July 28, 2018. Because Plaintiff was unable to name these intended Defendants, the court ordered service on Lancaster County to allow Plaintiff to serve interrogatories to learn the names of the intended Defendants. (Filing 50.) The court ordered that the County "answer Plaintiff's interrogatories . . . providing the names of the following individuals . . .

> • Unknown by Names, Correction Officers (LCJ), who dealt with Plaintiff in his assigned POD-R cell at the Lancaster County Jail and who allegedly placed him in a suicide restraint chair, injured his arm, and exposed him to unconstitutional conditions of confinement from July 25, 2018, to July 28, 2018."

(Filing 64 at CM/ECF p. 2.) The interrogatories Plaintiff served on the County included the following questions and the County's responses:

> **Interrogatory No. 1:** Unknown by names, correction officers (LCJ) who placed Yohan Webb #914129 on the morning hours between 7:30 AM – 11:00 AM on the 25 July 2018 in the (receiving area) which is located between the garage (sally port) and the sliding doors to (booking area) placed plaintiff in a suicide restraint chair in the (receiving area). **Response:** After diligent efforts, Lancaster County has been unable to identify any correctional officers responsive to this Interrogatory.
>
> **Interrogatory No. 5:** Inside of booking area near the finger-printing area there is a room which has a square hole in the floor that's used for a toliet (sic). This plaintiff was placed in that room. At some point this plaintiff was removed from the suicide chair; stripped naked, and (1) correctional officer restrained plaintiff's left arm and placed him in the back of the cell in the left corner causing injury to this plaintiff **Response:** Defendant objects to the form of the Interrogatory as being a compound question. Further, after diligent effort Lancaster County has been unable to identify any correctional officer who caused any injury to plaintiff.

(Filings 75-1 & 75-2.)

As noted above, the County responded that it could not identify the correctional officers (Filing 72). In response, the court ordered the County to show cause why it could not provide the names because:

> Plaintiff has made allegations specific enough to permit the identities of the officers on duty in Plaintiff's cell from July 25 to July 28, 2018, to be ascertained; Plaintiff has made diligent efforts to obtain such names on his own; and the County has "a far superior ability to accumulate and study the available records and documents regarding the officers" who were involved in Plaintiff's care during those dates. *Poole*, 2021 WL 2935899, at *4. It is the court's expectation that the County's "diligent efforts" in responding to Plaintiff's interrogatories

> included inspection of available video recordings, activity logs, attendance records, staff cell assignments, Plaintiff's medical complaints (if any), and perhaps staff interviews to determine who was present in the relevant area of the Lancaster County Jail from July 25 to July 28, 2018.

(Filing 72 at CM/ECF p. 3.)

The County responded that Plaintiff's interrogatories only asked for names of officers involved with Plaintiff in "the morning hours between 7:30AM-11:00**AM** on the 25 July 2018." The County claims that Plaintiff did not come into their custody until 1:44 **PM** on July 25, 2018, so the literal answer to the interrogatory was that no officer was involved, and that is how the County responded. The County explained that because Plaintiff was extremely combative when he came into custody, 20 officers interacted with him over the course of the day and took him in and out of restraints repeatedly. The County argues that answering Plaintiff's interrogatory "would have been entirely speculative about which instance of being placed in the therapeutic restraint chair plaintiff is referring to. If Lancaster County guessed wrong, they risked being sanctioned for being deceptive to the plaintiff. It was determined to answer exactly what the plaintiff asked." (Filing 75 at CM/ECF p. 2.)

Plaintiff's interrogatories to the County also asked for the name of the correction officer who "restrained plaintiff's left arm and placed him in the back of the cell . . . causing injury to this plaintiff." (Filing 75-2 at CM/ECF p. 2.) The County was not able to identify any employees who believed they may have injured Plaintiff, and the County claimed that none of Plaintiff's medical reports contained any evidence of Plaintiff mentioning a shoulder injury or shoulder pain. The County surmised, "It is entirely possible that this defendant could not locate any employees responsive to the interrogatory because the plaintiff did not suffer an injury." (Filing 75 at CM/ECF p. 2) The County also said it could not search the video because "the format is proprietary to the software manufacturer and the software is no longer supported by the ADF. The contents of the video file are unknown currently." (*Id.*)

3

The County added, "If the plaintiff is unhappy with those answers, it is only due to the poor questions posed to this defendant." (*Id*. at p. 3.)

## DISCUSSION

In response to the County's statement that "If the plaintiff is unhappy with those [interrogatory] answers, it is only due to the poor questions posed to this defendant," the County is surely aware that "[p]ro se Plaintiffs are regularly granted significant leeway in this court which is designed to compensate pro se litigants' lack of legal expertise." *Tyler v. Salazar*, No. CIV. 10-1161, 2012 WL 3113866, at *8 (D. Minn. June 27, 2012), *report and recommendation adopted,* No. CIV. 10-1161, 2012 WL 3113186 (D. Minn. July 31, 2012), *aff'd,* 504 F. App'x 538 (8th Cir. 2013). Indeed, "[p]leadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

Federal district courts have been advised to provide reasonable assistance to pro se inmates who are seeking to identify John Doe defendants when the pro se inmate provides sufficient details to permit further investigation. *Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir. 1997) (before dismissing unidentified defendant due to inability to permit service of process, district court should have assisted incarcerated pro se litigant with inquiry into unknown defendant's identity when plaintiff provided numerous details like officer's surname, assigned unit, and date and location of incident; district court "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant); *Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir. 1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery."); *Murphy v. State of Vermont Dep't of Corr.*, No. 2:14-CV-126, 2016 WL 890031, at *10 (D. Vt. Feb. 25, 2016), *report and recommendation adopted,* No. 2:14 CV 126, 2016

WL 907769 (D. Vt. Mar. 8, 2016) ("District courts have been instructed to provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of . . . 'John Doe' defendants." (internal quotation marks and citation omitted)). *See also Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (district court did not err in dismissing claims against Doe defendants where complaint "does not sufficiently allege who the Doe Defendants are, what they allegedly did, what their position is for the City, or any other facts that would permit the Doe Defendants to be noticed or identified through discovery").

Accordingly, this court will order the County to file with the court and serve upon the Plaintiff its answer to the following question:

> Please identify by name all Lancaster County Jail Correctional Officers who interacted with Plaintiff Johann Webb in his Lancaster County Jail cell, which was "adjacent right next to the photo/fingerprint station which is located in booking"[1] from July 25, 2018, to July 28, 2018.

IT IS ORDERED:

1. On or before April 11, 2022, Lancaster County shall file with the court, and serve upon Plaintiff, its answer to the following question:

> Please identify by name all Lancaster County Jail Correctional Officers who interacted with Plaintiff Johann Webb in his Lancaster County Jail cell, which was "adjacent right next to the photo/fingerprint station which is located in booking" from July 25, 2018, to July 28, 2018.

2. After such Defendants are identified, service of process will be ordered and Lancaster County will be dismissed from this action as a Defendant.[2]

---

[1] *See* Filing 77 at CM/ECF p. 1 ¶ 1.

[2] Defendant Melissa Ripley has waived service of summons. (Filing 74.)

3.    Plaintiff's Motion to Serve Summons on Defendant Melissa C. Ripley (Filing 73) is denied as moot, as such Defendant has already waived service of summons. (Filing 74.)

4.    Plaintiff's Motion for Status (Filing 76) is granted, and this Memorandum and Order shall serve to inform Plaintiff of the status of this case.

5.    Plaintiff's Motion to Appoint Counsel (Filing 77) is denied without prejudice for the same reasons stated in Filing 50 at CM/ECF p. 21.

DATED this 22nd day of March, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

6